LEE LITIGATION GROUP, PLLC
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, 8th Floor
New York, NY 10011
(212) 465-1180
*Attorneys for Plaintiff, FLSA Collective*
*Plaintiffs, and the Class*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

---

| | |
|---|---|
| MARLON WALDEMAR CARDONA LOPEZ a/k/a CARDONA LOPEZ, *on behalf of himself, FLSA Collective Plaintiffs, and the Class,* | Case No.: |
| Plaintiff, | **CLASS AND COLLECTIVE ACTION COMPLAINT** |
| -against- | |
| W BBQ HOLDINGS, INC. THREE AND SEVENTY-THREE GOURMET, LLC  d/b/a DALLAS BBQ, TWO AND EIGHT GOURMET LTD,  d/b/a DALLAS BBQ, BROADWAY & 166TH, L.L.C.  d/b/a DALLAS BBQ, 23RD & 8TH LLC,  d/b/a DALLAS BBQ, 180 BKLYN LIVINGSTON LLC,  d/b/a DALLAS BBQ, 49TH BROADWAY LLC,  d/b/a DALLAS BBQ, WEST FORDHAM BBQ LLC,  d/b/a DALLAS BBQ, REGO ENTERPRISES LLC,  d/b/a DALLAS BBQ, BAY PLAZA ENTERPRISES LLC,  d/b/a DALLAS BBQ, NOSTRAND ENTERPRISES LLC,  d/b/a DALLAS BBQ, JAMAICA BBQ LLC.,  d/b/a DALLAS BBQ, GREGOR WETANSON, and STUART J. WETANSON | **JURY TRIAL DEMANDED** |

Defendants.

_____

Plaintiff MARLON WALDEMAR CARDONA LOPEZ a/k/a CARDONA LOPEZ ("Plaintiff"), on behalf of himself and all others similarly situated, by and through his undersigned attorneys, hereby file this Class and Collective Action Complaint against Defendants W BBQ HOLDINGS, INC., THREE AND SEVENTY-THREE GOURMET, LLC d/b/a DALLAS BBQ, TWO AND EIGHT GOURMET LTD, d/b/a DALLAS BBQ, BROADWAY & 166TH, L.L.C. d/b/a DALLAS BBQ, 23RD & 8TH LLC, d/b/a DALLAS BBQ, 180 BKLYN LIVINGSTON LLC, d/b/a DALLAS BBQ, 49TH BROADWAY LLC, d/b/a DALLAS BBQ, WEST FORDHAM BBQ LLC, d/b/a DALLAS BBQ, REGO ENTERPRISES LLC, d/b/a DALLAS BBQ, BAY PLAZA ENTERPRISES LLC, d/b/a DALLAS BBQ, NOSTRAND ENTERPRISES LLC, d/b/a DALLAS BBQ, JAMAICA BBQ LLC., d/b/a DALLAS BBQ, (collectively "Corporate Defendants") and GREGOR WETANSON, and STUART J. WETANSON (the "Individual Defendants," and together with Corporate Defendants, "Defendants"), states as follows:

**INTRODUCTION**

1.      Plaintiff alleges, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§201 *et. seq.* ("FLSA"), that he is entitled to recover from Defendants: (1) unpaid wages due to invalid tip credit, (2) unpaid wages due to timeshaving, (3) compensation for improperly deducted meal credits, (4) liquidated damages and (5) attorneys' fees and costs.

2.      Plaintiff further alleges that, pursuant to the New York Labor Law ("NYLL"), he is entitled to recover from Defendants: (1) unpaid wages due to invalid tip credit, (2) unpaid wages due to timeshaving, (3) compensation for improperly deducted meal credits, (4) liquidated damages, (5) statutory penalties and (6) attorneys' fees and costs.

2

## JURISDICTION, AND VENUE

3.     This Court has jurisdiction over this controversy pursuant to 29 U.S.C. §216(b), 28U.S.C. §§1331, 1337 and 1343, and has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367.

4.     Venue is proper in the Eastern District pursuant to 28 U.S.C. §1391.

## PARTIES

5.     At all times relevant herein, Plaintiff was and is a resident of the State of New York, Queens County.

6.     Defendants own and operate a chain of restaurants under the trade name "Dallas BBQ" at the following locations:

    a.   241 W. 42nd Street, New York, NY 10036 ("Times Square BBQ");

    b.   261 8th Ave., New York, NY 10011 ("Chelsea BBQ");

    c.   1265 Third Ave., New York, NY 10021 ("Upper East BBQ");

    d.   3956 Broadway, New York, NY 10032 ("Washington Heights BBQ");

    e.   132 Second Ave., New York, NY 10003 ("East Village BBQ");

    f.   2160 Bartow Ave., Bronx, NY 11475 ("Co-op City BBQ");

    g.   218 West Fordham Road, Bronx, NY 11468 ("Fordham BBQ");

    h.   89-14 Parson Blvd., Jamaica, NY 11432 ("Jamaica BBQ");

    i.   61-35 Junction Blvd., Rego Park, NY 113745 ("Rego Park BBQ");

    j.   2146 Nostrand Ave, Brooklyn, NY 11210 ("Nostrand BBQ");

    k.   180 Livingston St., Brooklyn, NY 11201 ("Downtown Brooklyn BBQ");
         (collectively, the "Restaurants").

7.     Defendants operate the Restaurants as a single integrated enterprise, under family control of Individual Defendants GREGOR WETANSON, and STUART J. WETANSON. Specifically, the Restaurants are engaged in related activities, share common ownership and have a common business purpose.

a.   All the Restaurants are commonly owned and operated by the Wetanson family. **Exhibit A; Exhibit B.**

b.   All of Defendants' Restaurants are advertised jointly on their website: https://www.dallasbbq.com/.

c.   Defendants sell "Dallas BBQ" gift cards on their website, which can be used at all of Defendants Restaurants. *See* **Exhibit C.**

d.   The Restaurants share the "DALLAS BBQ" trademark and name and employees at both locations wear uniforms and use equipment bearing the same trade name and logo.

e.   All of the Restaurants share a common look and feel and specialize in serving affordable "chicken & ribs, BBQ, burgers, wings, and over-the-top frozen cocktails."

f.   All of the Restaurants use the exact same menu and drinks menu. *See* **Exhibit D.**

g.   On the bottom of every Restaurants' menu contains the address and location for every Restaurant. *See* **Exhibit D.**

h.   Defendants utilize one centralized form for their catering events, and utilize the same catering menu across all of the Restaurants. *See* **Exhibit E**.

i.   The Restaurants share an Instagram account. *See* **Exhibit F.**

j. The Restaurants all utilize a Loyal Rewards App, available on the Apple App Store or the Google Play Store. *See* **Exhibit G**.

k. All of the Restaurants utilize delivery services exclusively through "Uber Eats" or "Spoton."

l. Defendants utilize centralized administration functions and has a centralized payroll, Human Resources, public relations department, and accounting department that services all Restaurants.

m. Defendants provide the same terms of employment to employees at both Restaurants. Employees are subject to the same wage policies at both Restaurants and receive the same employee handbook.

n. Employees are freely transferable among the Restaurants because the operations are identical.

8.     At all times relevant herein, Corporate Defendant W BBQ HOLDINGS, INC, was and is a foreign business corporation duly organized under and existing by virtue of the laws of the State of Delaware, with a service of process address located at c/o CORPORATION SERVICE COMPANY, 80 STATE STREET, ALBANY, NY, UNITED STATES, 12207.

9.     At all times relevant herein, Corporate Defendant THREE AND SEVENTY-THREE GOURMET, LLC d/b/a DALLAS BBQ, was and is a domestic business corporation duly organized under and existing by virtue of the laws of the State of New York, with a principal place of business and service of process address located at 1265 THIRD AVENUE, NEW YORK, NY, 10021. Corporate Defendant THREE AND SEVENTY-THREE GOURMET, LLC operates the Dallas BBQ restaurant located at 203 East 72nd Street, New York, NY 10021.

10.     At all times relevant herein, Corporate Defendant TWO AND EIGHT GOURMET

5

LTD, d/b/a DALLAS BBQ, was and is a domestic business corporation duly organized under and existing by virtue of the laws of the State of New York, with a service of process address located at 23 WEST 43RD ST, ROOM 800, NEW YORK, NY, 10036 and a principal place of business at 132 Second Ave New York, NY 10003. Corporate Defendant TWO AND EIGHT GOURMET LTD operates the Dallas BBQ restaurant located at 132 2nd Avenue, New York, NY 10003.

11.     At all times relevant herein, Corporate Defendant BROADWAY & 166TH, L.L.C. d/b/a DALLAS BBQ, was and is a domestic limited liability company duly organized under and existing by virtue of the laws of the State of New York, with a service of process address located 3956 BROADWAY, NEW YORK, NY, UNITED STATES, 10032 and a principal place of business at 3956 Broadway New York, NY 10032. Corporate Defendant BROADWAY & 166TH, L.L.C. operates the Dallas BBQ restaurant located at 3956 Broadway, New York. NY 10032.

12.     At all times relevant herein, Corporate Defendant 23RD & 8TH LLC, d/b/a DALLAS BBQ, was and is a domestic limited liability company duly organized under and existing by virtue of the laws of the State of New York, with a service of process address and a principal place of business located at 261 8th Avenue, New York, NY 10011. Corporate Defendant 23RD & 8TH LLC operates the Dallas BBQ restaurant located at 261 8th Avenue, New York, NY 10011.

13.     At all times relevant herein, Corporate Defendant 180 BKLYN LIVINGSTON LLC, d/b/a DALLAS BBQ, was and is a domestic limited liability company duly organized under and existing by virtue of the laws of the State of New York, with a service of process address located at 80 State Street, Albany, NY 12207 and a principal place of business at 180 Livingston St Brooklyn, NY 11201. Corporate Defendant 180 BKLYN LIVINGSTON LLC operates the Dallas BBQ restaurant located at 180 Livingston Street, Brooklyn, NY 11201.

14.     At all times relevant herein, Corporate Defendant 49TH BROADWAY LLC, d/b/a DALLAS BBQ, was and is a domestic limited liability company duly organized under and existing

by virtue of the laws of the State of New York, with a service of process address located at 1185 Sixth Avenue, Floor 10, New York. NY 10036 and a principal place of business at 241 W 42nd Street New York, NY 10036. Corporate Defendant 49TH BROADWAY LLC operates the Dallas BBQ restaurant located at 253 West 42nd Street, New York, NY 10036.

15.     At all times relevant herein, Corporate Defendant WEST FORDHAM BBQ LLC, d/b/a DALLAS BBQ, was and is a domestic limited liability company duly organized under and existing by virtue of the laws of the State of New York, with a service of process address located at 1265 3RD AVENUE, NEW YORK, NY, 10021 and a principal place of business at 218 West Fordham Road Bronx, NY 11468. Corporate Defendant WEST FORDHAM BBQ LLC operates the Dallas BBQ restaurant located at 281 West Fordham Road, Bronx, NY 10468.

16.     At all times relevant herein, Corporate Defendant REGO ENTERPRISES LLC, d/b/a DALLAS BBQ, was and is a domestic limited liability company duly organized under and existing by virtue of the laws of the State of New York, with a service of process address located at 1265 3RD AVENUE, NEW YORK, NY, 10021 and a principal place of business at 61-35 Junction Blvd Rego Park, NY 11374. Corporate Defendant REGO ENTERPRISES LLC operates the Dallas BBQ restaurant located at 61-35 Junction Boulevard, #D107, Rego Park, NY 11374.

17.     At all times relevant herein, Corporate Defendant BAY PLAZA ENTERPRISES LLC, d/b/a DALLAS BBQ, was and is a domestic limited liability company duly organized under and existing by virtue of the laws of the State of New York, with a service of process address located at 1265 3RD AVENUE, NEW YORK, NY, 10021 and a principal place of business at 2160 Bartow Ave Bronx, NY 11475. Corporate Defendant BAY PLAZA ENTERPRISES LLC operates the Dallas BBQ restaurant located at 2160 Bartow Avenue, Bronx, NY 10475.

18.     At all times relevant herein, Corporate Defendant, NOSTRAND ENTERPRISES

LLC, d/b/a DALLAS BBQ, was and is a domestic limited liability company duly organized under and existing by virtue of the laws of the State of New York, with a service of process address located at 1265 3RD AVENUE, NEW YORK, NY, 10021 and a principal place of business at 2146 Nostrand Ave Brooklyn, NY 11210. Corporate Defendant NOSTRAND ENTERPRISES LLC operates the Dallas BBQ restaurant located at 2146 Nostrand Avenue, Brooklyn, NY 11210.

19.     At all times relevant herein, Corporate Defendant JAMAICA BBQ LLC., d/b/a DALLAS BBQ, was and is a domestic limited liability company duly organized under and existing by virtue of the laws of the State of New York, with a service of process address located at 1265 3RD AVENUE, NEW YORK, NY, 10021 and a principal place of business at 89-14 Parson Blvd Jamaica, NY 11432. Corporate Defendant JAMAICA BBQ LLC operates the Dallas BBQ restaurant located at 89-14 Parsons Blvd, Queens, NY 11432.

20.     Individual Defendant GREGOR WETANSON is an owner, partner, principal, and executive, of Corporate Defendants. Individual Defendant GREGOR WETANSON exercised control over the employment terms and conditions of Plaintiff, FLSA Collective Plaintiffs, and Class members. Individual Defendant GREGOR WETANSON frequently visits each of the Restaurants. Individual Defendant GREGOR WETANSON exercises the power to (and also delegates to managers and supervisors the power to) (i) fire and hire employees, (ii) determine rate and method of pay, (iii) determine work schedules, and (iv) otherwise affect the quality of employment of Plaintiffs, FLSA Collective Plaintiffs, and Class members. At all times, employees could complain to Individual Defendant GREGOR WETANSON regarding any of the terms of their employment, and Individual Defendant GREGOR WETANSON would have the authority to effect any changes to the quality and terms of their employment. Individual Defendant GREGOR WETANSON ensured that employees effectively served customers and exercised functional

8

control over the business and financial operations of Corporate Defendants. Individual Defendant GREGOR WETANSON had the power and authority to supervise and control supervisors of Plaintiff, FLSA Collective Plaintiffs and Class members and could reprimand employees. Individual Defendant GREGOR WETANSON visited both Restaurants on a weekly basis and instructs employees to ensure smooth operations of the Restaurants. When Individual Defendant GREGOR WETANSON sees anything wrong, he will immediately reprimand such employee at the Restaurant.

21.     Individual Defendant STUART J. WETANSON is an owner, partner, principal, and executive, of Corporate Defendants. Individual Defendant STUART J. WETANSON exercised control over the employment terms and conditions of Plaintiff, FLSA Collective Plaintiffs, and Class members. Individual Defendant STUART J. WETANSON frequently visits each of the Restaurants. Individual Defendant STUART J. WETANSON exercises the power to (and also delegates to managers and supervisors the power to) (i) fire and hire employees, (ii) determine rate and method of pay, (iii) determine work schedules, and (iv) otherwise affect the quality of employment of Plaintiffs, FLSA Collective Plaintiffs, and Class members. At all times, employees could complain to Individual Defendant STUART J. WETANSON regarding any of the terms of their employment, and Individual Defendant STUART J. WETANSON would have the authority to effect any changes to the quality and terms of their employment. Individual Defendant STUART J. WETANSON ensured that employees effectively served customers and exercised functional control over the business and financial operations of Corporate Defendants. Individual Defendant STUART J. WETANSON had the power and authority to supervise and control supervisors of Plaintiff, FLSA Collective Plaintiffs and Class members and could reprimand employees. Individual Defendant STUART J. WETANSON visited both Restaurants on a weekly basis and

instructs employees to ensure smooth operations of the Restaurants. When Individual Defendant STUART J. WETANSON sees anything wrong, he will immediately reprimand such employee at the Restaurant.

22.     At all relevant times, Defendants were and continue to be an "enterprise engaged in commerce" within the meaning of the FLSA and NYLL.

23.     At all relevant times, the work performed by Plaintiff was directly essential to the business operated by Defendants.

24.     At all relevant times, Defendants employed at least eleven (11) employees as defined under the NYLL.

25.     All of Defendants' Restaurants are appropriately named in this Complaint through the relevant Corporate Defendants. Because the Restaurants share identical illegal wage and hour policies, they (and the relevant Corporate Defendants) are properly named on the basis of their outstanding liability to the Class members for whom Plaintiff seeks to represent.

## FLSA COLLECTIVE ACTION ALLEGATIONS

26.     Plaintiff brings claims for relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all current and former non-exempt employees (including but not limited to servers, food runners, bussers, bartenders, barbacks, porters, hosts, cooks, and line cooks) employed by Defendant on or after the date that is six years before the filing of the Complaint in this case as defined herein ("FLSA Collective Plaintiffs").

27.     At all relevant times, Plaintiff and the other FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay

them (i) their proper wages due to timeshaving, (ii) their proper wages for invalid meal credit deductions. The claims of Plaintiffs stated herein are essentially the same as those of other FLSA Collective Plaintiffs. There is a Tipped Subcollective which has claims for unpaid wages due to an invalid tip credit. Plaintiff is additionally a member of the Tipped Subcollective.

28.     The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to §16(b) of the FLSA, 29 U.S.C. 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from the Defendants. Notice can be provided to the FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

## RULE 23 CLASS ALLEGATIONS – NEW YORK

29.     Plaintiff bring claims for relief pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all current and former non-exempt employees (including but not limited to servers, food runners, bussers, bartenders, barbacks, porters, hosts, cooks, and line cooks) employed by Defendants on or after the date that is six years before the filing of the Complaint in this case as defined herein (the "Class Period").

30.     All said persons, including Plaintiffs, are referred to herein as the "Class." The Class members are readily ascertainable. The number and identity of the Class members are determinable from the records of Defendants. The hours assigned and worked, the position held, and rates of pay for each Class member may also be determinable from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under F.R.C.P. 23.

31.     The proposed Class is so numerous such that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court.

Although the precise number of such persons is unknown because the facts on which the calculation of that number rests presently within the sole control of Defendants, there is no doubt that there are more than forty (40) members of the Class. The Class further includes a subclass of tipped employees ("Tipped Subclass") who also number more than forty (40). Plaintiff is a member of the Class and the Tipped Subclass.

32.     Plaintiff's claims are typical of those claims that could be alleged by any member of the Class, and the relief sought is typical of the relief, that would be sought by each member of the Class in separate actions. All the Class members were subject to the same corporate practices of Defendants (i) failing to pay proper wages due to timeshaving; (ii) improperly deducting meal credits from employees' wages; (iii) failing to provide proper wage statements that were in compliance with the requirements under the NYLL, and (iv) failing to provide proper wage notices that were in compliance with the requirements under the NYLL

33.     With regard to Plaintiff and the Tipped Subclass, Defendants also failed to pay them the proper minimum wage and overtime because Defendants were not entitled to claim any tip credit because they failed to meet statutory requirements under the NYLL. Plaintiff and the Tipped Subclass suffered from Defendants' failure to pay the proper minimum wage and the proper overtime due to Defendants' invalid tip credit allowance because Defendants (i) failed to properly provide tip credit notice at hiring and with every change in rate of pay thereafter, (ii) claimed tip credit for all hours worked despite having caused tipped employees to engage in non-tipped duties for hours exceeding 20% of the total hours worked each workweek, (iii) implemented an invalid tip pooling scheme in which managers participated in the tip pool, and (iv) failed to accurately keep track of daily tips earned and maintain records thereof.

34.     Defendants' corporate-wide policies and practices affected all Class members

similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class member.  Plaintiff sustained similar losses, injuries, and damages as other Class members, with such injuries and damages arising from the same unlawful policies, practices, and procedures.

35.     Plaintiff is able to fairly and adequately protect the interests of the Class and have no interests antagonistic to the Class. Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation, and have previously represented plaintiffs in wage and hour cases.

36.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of the wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because losses, injuries and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of class members' rights and the disposition of their

interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

37. Defendants and other employers throughout the state violate the NYLL. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

38. There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

    a) Whether Defendants employed Plaintiff and the Class members within the meaning of the New York law;

    b) What are and were the policies, practices, programs, procedures, protocols and plans of Defendants regarding the types of work and labor for which Defendants did not pay the Class members properly;

    c) At what common rate, or rates subject to common methods of calculation, was and are Defendants required to pay the Class members for their work;

    d) Whether Defendant properly notified Plaintiffs and the Class members of their hourly rates and overtime rates;

    e) Whether Defendants properly compensated Class Members for all of their hours worked due to their policy of timeshaving;

    f) Whether Defendants improperly deducted meal credits;

14

g) Whether Defendants properly provided notice to all tipped employees that Defendants were taking a tip credit;

h) Whether Defendants caused tipped employees to engage in non-tipped duties exceeding 20% of each workweek;

i) Whether Defendants accurately tracked the amount of tips earned each day and maintained records thereof;

j) Whether Defendants took the proper amount of tip credit allowance for each payment period under the New York Labor Law;

k) Whether Defendants provided proper wage notice, at date of hiring and dates of all wage changes thereafter, to all non-exempt employees per requirements of the NYLL; and

l) Whether Defendants provided proper wage statements informing all non-exempt employees of information required to be provided on wage statements under the New York Labor Law.

## STATEMENT OF FACTS

39. In or around April 2019, Plaintiff was hired by Defendants as a runner/busser at Defendants' "Dallas BBQ", located at 89-14 Parsons Blvd, Queens, NY 11432, until in or around July 2020, when Plaintiff quit. In or around February 2022, Plaintiff MARLON WALDEMAR CARDONA LOPEZ was re-hired by Defendants as a runner/busser at Defendants' "Dallas BBQ", located at 89-14 Parsons Blvd, Queens, NY 11432. Plaintiff's employment was then terminated in or around October 3, 2022.

40. Throughout his employment, Plaintiff's schedule varied week by week, but he typically worked five (5) to six (6) days, from 5:00 p.m. to 1:00 a.m.

41.     Throughout his employment with Defendants, Plaintiff was paid the tip credit minimum wage rate.

42.     Throughout his employment with Defendants, Defendants automatically deducted a thirty (30) minute meal break from Plaintiff's hours worked. However, approximately two (2) times per week, Plaintiff was unable to take a break and had to continue working. Additionally, approximately two (2) additional times per week, Plaintiff would begin to take his break, but was interrupted before his break was over and required to get back to work. FLSA Collective Plaintiffs and Class Members similarly had to work through their breaks and constantly had their breaks interrupted.

43.     Throughout his employment with Defendants, at the instructions of his managers, approximately three (3) time per week Plaintiff was required to clock out of his shift at 12:00 a.m. and continue performing work off the clock until 1:00 a.m. FLSA Collective Plaintiffs and Class Members similarly had to clock out and perform work off the clock.

44.     Throughout Plaintiff's employment, Defendants also automatically deducted a meal credit from employees' wages for each shift they worked, without regard to whether their employees actually consumed the credited meal.  Similarly, FLSA Collective Plaintiffs and Class members had a meal credit deducted from their wages regardless of whether they actually consumed the credited meals or not.

45.     Plaintiff, the Tipped Subcollective, and the Tipped Subclass were paid below the minimum wage at an invalid "tip credit" minimum wage. With respect to Plaintiff, the Tipped Subcollective, and the Tipped Subclass Defendants were not entitled to claim any tip credit allowance under the FLSA or the NYLL because Defendants (i) failed to properly provide tip credit notice at hiring and with every change in rate of pay thereafter, (ii) claimed tip credit for all

hours worked despite having caused tipped employees to engage in non-tipped duties for hours exceeding 20% of the total hours worked each workweek, (iii) implemented an invalid tip pooling scheme in which managers participated in the tip pool, and (iv) failed to accurately keep track of daily tips earned and maintain records thereof.

46.     Plaintiff, the Tipped Subcollective, and the Tipped Subclass were also required to engage more than 20% of their working time in non-tipped related activities, including preparing food, making coffee, polishing silverware and glassware, restocking the bathrooms, restocking condiments and the bar, folding napkins and taking out all the garbage in the premises. Even though Defendants required tipped employees to engage in non-tipped activities for hours exceeding 20% of the total hours worked each workweek, Defendants improperly claimed tip credit for all hours worked by tipped employees.

47.     Throughout Plaintiff's employment, Defendants also automatically deducted a meal credit from employees' wages for each shift they worked, without regard to whether the meal credit deducted exceed the meals "reasonable cost"[1] , whether the meals provided satisfied New York State's nutritional requirements containing all four (4) food groups[2], and whether employees actually consumed the credited meals or not. Similarly, FLSA Collective Plaintiffs and Class members had a meal credit deducted from their wages regardless of whether the meal credit deductions were reasonable, whether the meals satisfied the New York State's nutritional requirements, and whether employees they actually consumed the credited meals or not.

48.     Defendants knowingly and willfully operated their business with a policy of not providing proper wage statements and wage notices as required under New York Labor Law.

---

[1] 29 C.F.R. § 531.3
[2] N.Y. Comp. Codes R. & Regs. tit. 12, § 146-3.7

49.     In failing to provide proper wage statements and notices, Defendants have failed to comply with the law in a manner that clearly entails a concrete risk of harm to an interest identified by the New York State legislature.  Defendants' failure to provide such notices trivializes the importance of these notices in protecting Plaintiff's interest in ensuring proper pay.  Despite Defendants' conduct, there is a reason why the New York legislature concluded that enacting wage notice provisions would "far better protect workers' rights and interests" than existing penalties. *See* N.Y. Spons. Mem., 2010 S.B. 8380.  Written notices function as a means of apprising employees of their rights and of their employer's obligations towards them, empowering employees to advocate for themselves. Deprivation of such notices necessarily entails a significant risk of harm to the employees' concrete interest in being paid properly and timely.

50.     Here, Defendants' failure goes beyond generating a risk of harm to Plaintiff and Class members. Defendants' conduct actually harmed Plaintiff and Class members.  Defendants' failure to provide paystubs listing all hours and rates of pay, including overtime hours and overtime rates, deprived employees of the ability to contest Defendants' calculations, allowed Defendants to hide their wrong-doing, and necessitated the current litigation to vindicate Plaintiff and Class members' rights. This conduct ensured Defendants' ability to further delay providing proper compensation to low wage earners entitled to protection under federal and state law. Moreover, Defendants failure to provide wage notices allowed Defendants to hide the proper frequency of pay to employees.  Defendants' failure to provide a wage notice to employees allowed Defendants to hide their responsibility and deprive employees of timely compensation.

51.     Due to Defendants' failure to provide legally mandated notices such as earning statements and wage notices, Defendants were able to hide their wrongdoing from employees, and continue to attempt to hide their wrongdoing necessitating the current litigation.  The failure to

provide NYLL notices continues to result in delayed payment of all proper wages owed to Plaintiff and Class members.  This delayed payment caused Plaintiff to struggle to timely pay bills.  Class members similarly struggle to timely pay debts due to Defendants continued attempts to hide wrongdoing from employees.

52.     Defendants knowingly and willfully operated their business with a policy of not paying the FLSA minimum wage or the New York State minimum wage, and the proper overtime rate thereof for hours worked over forty (40) in a workweek, to Plaintiff, the Tipped Subcollective, and Tipped Subclass members. Defendants were not entitled to claim any tip credits under the NYLL.

53.     Defendants knowingly and willfully operated their business with a policy of not paying Plaintiff, FLSA Collective Plaintiffs and Class members for all hours worked due to Defendants' policy of time-shaving.

54.     Defendants knowingly and willfully operated their business with a policy of improperly deducting meal credits from Plaintiff, FLSA Collective Plaintiffs and the Class members, in violation of the FLSA and the NYLL.

55.     Defendants knowingly and willfully operated their business with a policy of not providing proper wage statements as required under the NYLL.

56.     Defendants knowingly and willfully operated their business with a policy of not providing proper wage notices to employees, at the beginning of employment and at dates of all wage changes thereafter, pursuant to the requirements of the NYLL.

57.     Plaintiff retained Lee Litigation Group, PLLC to represent Plaintiff, FLSA Collective Plaintiffs and Class members, in this litigation and have agreed to pay the firm a reasonable fee for its services.

## STATEMENT OF CLAIM

## COUNT I

## VIOLATION OF THE FAIR LABOR STANDARDS ACT

58.     Plaintiffs reallege and reaver Paragraphs 1 through 57 of this Class and Collective Action Complaint as if fully set forth herein.

59.     At all relevant times, Defendants were and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).  Further, Plaintiff and FLSA Collective Plaintiffs are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

60.     At all relevant times, Defendants employed Plaintiff and FLSA Collective Plaintiffs within the meaning of the FLSA.

61.      At all relevant times, the Defendants had gross annual revenues in excess of $500,000.

62.     At all relevant times, Defendants had a policy and practice of failing to pay proper wages to Plaintiff and FLSA Collective Plaintiffs due to Defendants' policy of time-shaving.

63.     At all relevant Defendants had a policy and practice of failing to pay proper wages to Plaintiff and the Tipped Subcollective due to utilizing an invalid tip credit.

64.     At all relevant times, Defendants had a policy and practice of improperly deducting meal credits from Plaintiff and FLSA Collective Plaintiffs regardless of whether the meal credit deducted exceed the meals "reasonable cost", whether the meals provided satisfied New York State's nutritional requirements containing all four (4) food groups, and whether Plaintiff and FLSA Collective Plaintiffs consumed the meals in question.

65.     Records, if any, concerning the number of hours worked by Plaintiff and FLSA

Collective Plaintiffs and the actual compensation paid to Plaintiff and FLSA Collective Plaintiffs should be in the possession and custody of the Defendants. Plaintiffs intend to obtain these records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then seek leave of Court to amend this Complaint to set forth the precise amount due.

66.     Defendants failed to properly disclose or apprise Plaintiff and FLSA Collective Plaintiffs of their rights under the FLSA.

67.     As a direct and proximate result of Defendants' willful disregard of the FLSA, Plaintiff and FLSA Collective Plaintiffs are entitled to liquidated (i.e., double) damages pursuant to the FLSA.

68.     Due to the intentional, willful and unlawful acts of Defendants, Plaintiff and FLSA Collective Plaintiffs suffered damages in an amount not presently ascertainable of unpaid wages due to timeshaivng, unpaid wages due to an invalid tip credit, unpaid wages due to invalid meal credit deductions, plus an equal amount as liquidated damages.

69.     Plaintiff and FLSA Collective Plaintiffs are entitled to an award of his reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 216(b).

## COUNT II

## VIOLATION OF THE NEW YORK LABOR LAW

70.     Plaintiff realleges and reavers Paragraphs 1 through 69 of this Class and Collective Action Complaint as if fully set forth herein.

71.     At all relevant times, Plaintiff and Class members were employed by Defendants within the meaning of the NYLL, §§ 2 and 651.

72.     Defendants willfully violated Plaintiff and Class members' rights by failing to pay them wages in the lawful amount for all hours worked as Defendants were not entitled to claim

any tip credits.

73.      Defendants willfully violated Plaintiff and Class members' rights failing to pay proper wages to Plaintiff and Class members due to Defendants' policy of time-shaving.

74.      Defendants willfully violated Plaintiff and Class members' rights by deducting a meal credit from the wages of Plaintiff and other Class members for meals which did not satisfy the nutritional requirements, were not provided, or were not consumed by Plaintiff and Class members, in violation of the NYLL.

75.      Defendants knowingly and willfully failed to provide proper wage statements to Plaintiff and Class Members as required under the New York Labor Law as they failed to accurately reflect Plaintiff and Class Members wages due to Defendants timeshaving policy, utilization of an invalid tip credit, and improper meal credit deductions.

76.      Due to the Defendants' NYLL violations, Plaintiffs and Class members are entitled to recover from Defendants' unpaid wages due to an invalid tip credit, unpaid wages due to timeshaving, compensation for improperly deducted meal credits, reasonable attorneys' fees, liquidated damages, statutory penalties and costs and disbursements of the action, pursuant to NYLL.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court assume jurisdiction herein and thereafter grant the following relief:

a.      A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the NYLL;

b. An injunction against Defendants and its officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

c. An award of unpaid wages and unpaid overtime compensation, including those due to Defendants' invalid tip credit policy under the FLSA and the NYLL;

d. An award of unpaid wages and unpaid overtime compensation, including those due to Defendants' improper time-shaving policy under the FLSA and the NYLL;

e. An award of improperly deducted meal credits under the FLSA and the NYLL;

f. An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay proper wages due to timeshaving, proper wages due to an invalid tip credit, and proper wages due to improperly deducted meal credits pursuant to 29 U.S.C. § 216;

g. An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay proper wages due to timeshaving, proper wages due to an invalid tip credit, and proper wages due to improperly deducted meal credits, pursuant to the NYLL;

h. An award of prejudgment and postjudgment interest, costs and expenses of this action together with reasonable attorneys' and expert fees and statutory penalties;

i. Designation of Plaintiff as the Representative of the FLSA Collective Plaintiffs;

j. Designation of this action as a class action pursuant to F.R.C.P. 23;

k. Designation of Plaintiff as Representative of the Class; and

l. Such other and further relief as this Court deems just and proper.

## **JURY DEMAND**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable as of right by jury.

Dated: February 10, 2023
      New York, New York        By:      _____*/s/ C.K. Lee*_____
                                            C.K. Lee, Esq.

                                      **LEE LITIGATION GROUP, PLLC**
                                      C.K. Lee, Esq. (CL 4086)
                                      Anne Seelig, Esq. (AS 3976)
                                      148 West 24th Street, 8th Floor
                                      New York, NY 10011
                                      Tel.: 212-465-1188
                                      Fax: 212-465-1181
                                      *Attorney for Plaintiff, FLSA Collective*
                                      *Plaintiffs and the Class*